**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>　　　vs.<br><br>Rame Jak<br>　　　　Defendant.<br><br>YOB: 1984<br>United States Permanent Resident | Date of Arrest: April 03, 2025<br>Magistrate's Case No. **25-01443MJ**<br><br>COMPLAINT FOR VIOLATION OF<br><br>COUNT ONE: 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii)<br>Possession with Intent to Distribute a Controlled Substance (Cocaine)<br><br>COUNT TWO: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii)<br>Possession with Intent to Distribute a Controlled Substance (Methamphetamine)<br><br>COUNT THREE: 18 U.S.C. §§ 924(c)(1)(A)(i) and (b) Use of a Firearm in Furtherance of a Crime of Violence or Drug Trafficking Crime |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

COUNT ONE

On or about April 3, 2025, at or near Yuma, Arizona, within the District of Arizona, the defendant, Rame Jak, did knowingly and intentionally possess with the intent to distribute approximately 28 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(B)(iii).

COUNT TWO

On or about April 3, 2025, in Yuma, Arizona, within the District of Arizona, the defendant, Rame Jak, did knowingly and intentionally posses with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

COUNT THREE

On or about April 3, 2025, in the District of Arizona, the defendant, Rame Jak, did knowingly possess a firearm, namely a 9mm Berretta handgun, serial #BER006124CA2F, in furtherance of a drug trafficking crime for which he may be prosecuted in a Court of the United States, that is, possession with intent to distribute cocaine and methamphetamine, as alleged in Counts 1-2 of this Complaint, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

I further state that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Reviewed by: SAUSA Regan Pauls

REGAN PAULS (Affiliate)
Digitally signed by REGAN PAULS (Affiliate)
Date: 2025.04.04 08:46:55 -07'00'

RICHARD GOSPODAREK
Digitally signed by RICHARD GOSPODAREK
Date: 2025.04.04 08:50:01 -07'00'

Richard Gospodarek
Special Agent
Drug Enforcement Administration

Sworn telephonically before me, April 4, 2025, at Yuma, Arizona.

James F. Metcalf
United States Magistrate Judge

## STATEMENT OF FACTS

I, Special Agent Richard Gospodarek, Drug Enforcement Administration, being duly sworn, declare the following:

## INTRODUCTION AND BACKGROUND AFFIANT

1. I, Richard Gospodarek, your affiant, am a Special Agent with the Drug Enforcement Administration (DEA) and have been so assigned since April 2024, I am currently assigned to the DEA Yuma Resident Office. In April 2024, I completed the Basic Agent Training Program at the DEA Office of Training in Quantico, Virginia. While attending Basic Agent Training I received instruction on topics including narcotics identification, surveillance techniques, operational methods of narcotics traffickers, undercover operations and current trends/patterns involving the distribution of narcotics. During my career in law enforcement, I have participated in various number of investigations involving illegal drugs and drug proceeds. Before my appointment as a Special Agent, I was employed by Northrop Grumman Corporation as a Mechanical Engineer for approximately 3 years. My duties as a Mechanical Engineer included design and implementation of new hardware, product improvement and initial production support on advanced weapon systems. I have received a B.S. in Mechanical Engineering with a Minor in Aerospace Engineering and Mathematics from the University of Arizona in Tucson, Arizona.

2. In the course of these investigations and my training at the DEA academy, I have been involved in seizures of marijuana, cocaine, heroin, fentanyl and methamphetamine. I have assisted in the interrogation of numerous subjects/defendants involved in and/or arrested for drug and narcotics violations. I also have participated in several joint interagency federal and state investigations. In the course of these investigations, I conducted thorough background checks

of targets, conducted physical surveillance, executed search warrants and monitored and reviewed recorded conversations of drug traffickers. I have deployed confidential sources and corroborated source information. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephone, cellular telephone technology, internet, coded communications, slang filled conversations, false and fictitious identities and other means to facilitate their illegal activities and mislead law enforcement investigations. During the conduct of my official duties, I have assisted other law enforcement officers in preparation of various search warrants, arrest warrants and criminal complaints.

    3. Based on my training, and experience and conversations with other law enforcement officials, I know that the experienced and well-structured Drug Trafficking Organizations (DTOs) usually compartmentalize their illegal operations. These DTOs subcontract their operations to sub-organizations, also known as (a/k/a) "cells," who work independently from each other to facilitate the smuggling and distribution of controlled substances. For instance, these cells carry out different tasks to include: the receipt and transportation of controlled substances from the source country; the importation/smuggling of the controlled substances into the United States; the temporary storage of the controlled substances as they await to follow-on transportation; the transportation of the controlled substances as they await follow-on transportation; the transportation of the controlled substances to different cities within the United States; and the transportation of bulk cash derived from the sale of

the controlled substance back to the source(s) of supply of the controlled substance.

4. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein.  I have personal knowledge of the following facts or have learned them from other law enforcement officers.  I also relied on my training, experience, and background in law enforcement to evaluate this information.  Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

## PROBABLE CAUSE

5.  On April 3, 2025, at approximately 9:00 a.m., Arizona Department of Public Safety (AZDPS) Trooper Gabe Aguirre was observing traffic along Interstate 8 (I-8). Aguirre, observed a black 2021 Tesla bearing California license plate [CX80X54], with a single occupant, later identified as Rame JAK (JAK) by his driver's license, traveling eastbound on I-8. Trooper Aguirre noticed the black Tesla driving in the middle of the road, straddling both the passing and traveling lane at the same time, for approximately a quarter mile. Trooper Aguirre also noticed the vehicle was driving at approximately 90 miles-per-hour (MPH), in a posted speed limit zone of 75 MPH. Trooper Aguirre then initiated a traffic stop of the black Tesla near mile marker 48, near Tacna, Arizona.

6.  Trooper Aguirre approached the vehicle, and spoke to JAK. When the Trooper asked where JAK was coming from and heading to, JAK stated he was coming from San Diego, California and was driving to Scottsdale, Arizona. Trooper Aguirre noticed that JAK was mumbling when he was speaking, and Trooper Aguirre had JAK exit the vehicle. The Trooper then performed a field sobriety test on JAK, and determined that JAK was Driving Under the Influence (DUI) (Arizona Revised Statue (ARS) 28-

1381) and was driving recklessly (ARS 28-693). Aguirre arrested JAK for the violations of ARS 28-1381 and ARS 28-693.

7. Prior to the vehicle being towed, Trooper Aguirre inventoried the vehicle. Trooper Aguirre discovered a white powdery substance in the center counsel of the vehicle also found in a green bear container, that later tested positive for the characteristics of cocaine. Trooper Aguirre also found approximately $4,950.00 United States Dollars (USD) in bills, pills, mushrooms, and a 9mm Berretta handgun inside the vehicle. The handgun was found in the rear of the vehicle with one round in the chamber and no magazine inserted. The magazine was later found to be on the passenger seat of the vehicle with ammunition inside. Trooper Aguirre, opened the green bear container containing a white powdery substance which he was subsequently exposed to. Trooper Aguirre experienced abnormal health symptoms, such as a headache and dizziness. Trooper Aguirre was transported to the hospital for medical evaluation.

8. The Drug Enforcement Administration (DEA) Yuma Resident Office (YRO) was called, and Special Agents (SAs) arrived on scene at approximately 10:00 a.m. Upon arrival, Special Agents with the help of AZDPS transported JAK, along with the currency, and firearm to the YRO. Due to the white powdery substance the Trooper was exposed to, the vehicle was deemed to be unsafe to drive to the YRO. The vehicle was towed to the YRO, and simultaneously escorted by an AZDPS Trooper.

9. At approximately 11:30 a.m., during a post *Miranda* Interview, JAK admitted to possession of the firearm, gummies, powder and other items in the vehicle. JAK stated the powder was going to be tested at a third-party lab in the Phoenix area for research. Investigators asked JAK how long he has had the vehicle, he stated he was in possession of the vehicle for two days. When asked if there was anything in the vehicle prior to him taking possession, JAK stated the only thing in the vehicle prior to him taking possession was a black gym bag. JAK stated the black gym bag belonged to his brother. During the search of the vehicle, investigators found multiple baggies containing a white

powdery substance in United States Postal Service (USPS) envelopes on the driver's seat floorboard. The white powdery substance, tested positive with a drug field test kit, for the characteristics of cocaine. An additional USPS envelope was found on the floorboard of the driver's seat, with a crystal-like substance, that field tested positive for the characteristics of methamphetamine.

10. Furthermore, during the search of the vehicle, investigators discovered additional baggies with a white powdery substance. Red and orange pills were found in the vehicle, which tested positive with a drug field test kit, for the characteristics of methamphetamine. Hundreds of single use clear plastic bags, commonly used for single dose drugs.

11. Based on the foregoing, there is probable cause to believe that Rame JAK committed the offenses, alleged in the Complaint.

_RICHARD GOSPODAREK_
Digitally signed by RICHARD GOSPODAREK
Date: 2025.04.04 08:50:43 -07'00'

Richard Gospodarek
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed telephonically, on this __4th__ day of April, 2025, at Yuma, Arizona.

_____
James F. Metcalf
United States Magistrate Judge